## No. 2167

### Second Circuit Appeal

---

## MISSOURI PAINT & VARNISH CO. v. A. R. McCAMMOND

---

(March 30, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Obligations—Par. 172 173.

A purchased roof paint from B with the understanding that B's agent was to apply the paint and paint was not to be paid for until ninety days thereafter provided there were no leaks. A refused to allow B's agent to apply the paint because B sent the invoice and demanded payment before payment was to be made. Held, the fact that plaintiff B demanded payment previous to the time agreed upon afforded A no grounds for refusing to use the paint or allow B to comply with his contract.

Appeal from Twelfth Judicial District Court of Louisiana, Parish of DeSoto. Hon. John R. Boone, Judge.

This is a suit to recover the price of roof paint sold and delivered.

Judgment for plaintiff and defendant appealed.

Judgment affirmed.

Lee & Bell, of Mansfield, attorneys for plaintiff, appellee.

Craig, Bolin & Magee, of Mansfield, attorneys for defendant, appellant.

ODOM, Judge. Plaintiff sues defendant to recover the sum of $330.75 and 5 per cent per annum interest thereon from October 9, 1920, until paid, the said amount being the value of four barrels of "Liquid Sealaleak" roof paint alleged to have been sold and delivered to defendant.

Defendant, in answer, denied any indebtedness to plaintiff, but in paragraph three of the answer sets out that on or about September 4, 1920, one of plaintiff's salesmen called on him and "respondent agreed to purchase the goods described in Article 1 of plaintiff's petition on the representation made to him by said salesman * * * that the said company would send a man to respondent's mill at South Mansfield, Louisiana, to direct the application of said paint to the roofs of respondent's buildings and that respondent would not be asked to pay for said paint until it had been tested satisfactorily on his said buildings.

In paragraph four of his answer defendant says that the above representations were clearly understood between said salesman and himself and that he would not have placed this order for said paint if said representations and agreement had not been made by the salesman.

And in section five of his answer he alleges that, contrary to said agreement, plaintiff sent an invoice for said goods before they were received by him; and in paragraph six he says that in response to plaintiff's demands for payment he promptly notified plaintiff of the representations made by its salesman and that he would not have received them except

under the terms and conditions under which he had bought them; and in paragraph seven he says he has not received the goods.

In the District Court there was judgment for plaintiff for the amount sued for and interest at five per cent from December 1, 1920, until paid, and all costs; from which judgment defendant appealed.

### OPINION

It seems that on or about September 4, 1920, Mr. Myers, who represented the plaintiff as salesman in that territory, called on defendant for the purpose of selling him a certain kind of roof paint called "Sealaleak." Defendant, it seems, told Myers, the salesman, that he needed a preparation for his roof but that he had been "well stung" on such preparations, whereupon Myers made certain representations and guaranties concerning the preparation he was selling, which representations and guaranties, according to defendant's answer, are as follows:

"That the said company would send a man to respondent's mills at South Mansfield, Louisiana, to direct the application of said paint to the roofs of defendant's buildings; and that respondent would not be asked to pay for the said paint until it had been tested satisfactorily on his said buildings.".

On these representations, that is, that a man would be sent by the vendor to supervise the application of the paint to the roof and that defendant would not be required to pay for it until a satisfactory test was made, defendant purchased four barrels of paint from plaintiff represented by Meyers. The order was promptly sent in by Myers; the goods were shipped from St. Louis about September 9th and reached South Mansfield about September 17th. The freight bill in due course was presented to defendant by the railroad company's agent and was paid by him, although it appears that defendant had an arrangement with the railroad's agent by which his freight bills were allowed to accumulate until the first of the month, when they were all paid with one check, and that defendant did not know that the bill for freight on this paint was included in the batch when he paid it. However this may be, it is a matter of no importance whether he knew he was paying it or not.

Both plaintiff and defendant seem to have treated this transaction as a completed sale. There were the thing, the price and the place of delivery all agreed upon. But defendant says that the sale was made under certain terms and conditions as set out in his answer and as set out in the brief of counsel, as follows:

"1. The plaintiff would send a man to defendant's mill at South Mansfield, La., to direct the application of said paint or roof preparation.
"2. That, after the application of said roof preparation, the defendant would be allowed a period of ninety (90) days to test the preparation to see if it came up to the representations of the salesman before defendant would be required to pay therefor; that if in ninety (90) days there had not been sufficient rain for a complete test, then defendant would be extended further time to fully test the application before being required to pay for said purchase."

The authority of Myers, the salesman, to bind his company, the plaintiff, to the above stipulations as to the supervision of the application of the paint to the roof and as to postponement of the payment until a thorough test, is not disputed by plaintiff; although, contrary to the agreement, the plaintiff forwarded the invoice of the sale and a bill to the defendant immediately upon shipment; the

invoice and bill reaching defendant before the goods reached the depot in South Mansfield, and although plaintiff wrote defendant on October 19th making demand for payment.

But plaintiff says that Myers did not inform it that the payment was not to be made until the preparation was tried.

On October 23rd defendant replied by letter to explain letter of October 19th, calling plaintiff's attention to the fact that he had purchased the goods with the understanding that they were not to be paid for until tried. Plaintiff replied to that letter on October 26th setting out, in substance, that the paint was sold under an absolute guarantee that it would stop leaks for six years and that if it did not stop leaks as represented that plaintiff would furnish sufficient material free of charge to bring about the desired result; and it further suggested that the defendant apply the paint, and if he desired further time in which to make the payment he might have until December 1st. This letter of plaintiff's was written in reply to defendant's letter to it, setting out that defendant understood he was to have the paint tried out before paying for it.

But plaintiff does not repudiate its agent's authority to postpone payment until after trial, nor has such authority ever been disputed, but, on the contrary, plaintiff stated in its letter of October 26th that it would extend the time for payment until December 1st, which, as it stated, would allow sufficient time for the demonstration.

As we appreciate the testimony, there is scarcely any disagreement between Myers, plaintiff's agent, and the defendant as to the contract. They agree on the essential facts. Myers says that he agreed to supervise the application of the paint to the roof, guaranteeing it to stop leaks, and agreed that the defendant would not be called upon to pay for it until it was applied and it was demonstrated that it would stop the leaks. This is all that was claimed by defendant.

But defendant seems to have become very much dissatisfied with his contract and refused to allow the paint to be applied to his roofs. He was asked why he refused to use the paint and he replied, "because he had not complied with his contract with me," and he explains the contract and says that no one came to apply the paint and that payment was demanded previous to the trial.

The testimony shows that defendant repudiated the transaction before Myers had an opportunity to apply the paint. He says that he received the invoice for the paint shortly after its date, which was September 9th, and he was asked: "It was then that you refused to receive the paint," and he answered, "Yes"; and, further, "And you were to have ninety days in which to have paid for it after it was applied?" "Ninety days or six months." And he explains that it was thereafter that he wrote the letter dated October 23rd.

(Testimony, page 24.)

Defendant's own testimony convinces us that he became offended because plaintiff forwarded the invoice for the goods and demanded payment before the payment was to be made under the contract which he had with Myers, and that he repudiated the contract solely on that account.

Myers made several trips to defendant's place of business for the purpose of having the paint applied as per contract. While defendant says in some portions of his testimony that no one offered to apply it, his testimony on page 20 shows that he is not certain about that, as he refused to swear that Myers did not ap-

pear and offer to apply the paint as per agreement. He says that Myers may have done so; that he will not swear that he did not.

In view of Myers' positive testimony that he did make several trips to plaintiff's place of business and offer to apply the paint, and in view of defendant's testimony that he cannot swear that Myers did not do so, we must hold that Myers did what he agreed to do looking to the carrying out of the contract as made.

The agreement which Myers made with defendant was binding upon plaintiff in every detail. Myers was plaintiff's agent, and as representing plaintiff he went to defendant's place of business more than once and offered to carry out the contract and reiterated his former statement to defendant that he would not have to pay for the paint until after trial, but defendant refused to permit him to carry out the contract.

The fact that plaintiff demanded payment previous to the time agreed upon afforded defendant no ground for refusing to use the paint on his roofs as per the agreement. He should have stood squarely upon the contract as made by allowing the application of the paint to the roof and then refusing payment, even though demanded, until the paint had remained on the roof long enough for its good qualities to be proved as per the guaranties. If, after trial, the paint did not stop the leaks as was represented, defendant would not have been compelled to pay the price. On plaintiff's demand for payment defendant could have successfully pleaded failure of consideration.

We think it not necessary to cite authorities on this point.

We see no error in the judgment of the lower court and it is therefore affirmed with costs.